(83 N. W. Rep. 6.)

---

## A. B. McDONALD *vs.* GEORGE W. BEATTY, *et al.*

Opinion filed May 17, 1900.

**Statement of Case—Settlement After Time.**

In this case, after the entry of judgment, counsel for the appellant served upon counsel for respondents a proposed statement of the case to which no proposed amendments were ever served. About one year after the service of said proposed statement, and long after the statutory period for settling the case had run, the trial court settled and allowed a statement of the case in this action, which statement differed in vital particulars from the proposed statement served upon counsel for the respondents. Pursuant to notice, counsel for respondents appeared before the District Court at the time of the settlement and allowance of the statement, and then and there filed written objections to the settlement of such statement or any statement herein, for the reason, among others, that the time allowed for such settlement had expired, and that no cause for an extension of time had ever been shown to the court; which written objections were supported by affidavit to the effect that no cause for an extension had ever been brought to the knowledge of respondents' counsel by notice or otherwise, and that counsel knew of no cause. No attempt was made to show cause by the appellant's counsel, and no reason for extending time was stated by the trial court, but, on the contrary, the statement was settled without showing cause, or attempting to do so. In this court a motion to strike the statement from the record upon the grounds above set out was granted. Under the circumstances stated, we hold that the fact that no cause for an extension was shown appeared affirmatively upon the record, and in such cases no power to extend time exists in the trial court.

**When Time to Settle Case Begins to Run.**

> Section 5467, Rev. Codes, construed, and *held* that, in cases where no proposed amendments are served to a proposed statement of the case, the statute allows 20 days within which the statement may be settled without an extension of time. Said period of 20 days begins to run at the expiration of the time allowed by statute for the service of such proposed amendments.

**Judgment Upon Findings.**

> Upon consideration of the findings of the trial court, *held*, that the judgment entered below was fully justified by such findings.

Appeal from District Court, Towner County; *Morgan, J.*

Action by A. B. McDonald against George W. Beatty and Alice L. Beatty. Judgment for defendants, and plaintiff appeals.

Affirmed.

*John Burke* and *Frank Davis* (*Newman, Spalding & Stambaugh,* of counsel), for appellant.

*Cochrane & Corliss,* for respondents.

WALLIN, J. This action was instituted in April, 1897, and was tried, in December of that year, before the court without a jury. The findings were filed in July, 1898, and judgment was entered in favor of the defendants in October, 1898. The record shows that appellant's counsel served a proposed statement of the case on respondents' counsel on the 18th day of December, 1898, and that no other proposed statement was at any time served on the respondents' counsel in this case. On December 2, 1899, upon notice given to respondents' counsel, the appellant applied to the trial court for the settlement and allowance of the statement of the case as served on December 18, 1898. No proposed amendments to the proposed statement were ever served. The trial court, on said 2d day of December, 1899, proceeded to settle a statement of the case, which statement forms a part of the record transmitted to this court. The statement so settled and transmitted differed in its structure and constituent elements from said proposed statement served on the respondents' counsel in divers respects, and particularly in this that the proposed statement embodied only a version of the evidence reduced to a narrative form, while the statement actually settled and allowed consisted of a rescript of the evidence and proceedings as embodied in the stenographer's report of the trial. At the time said statement was settled (December 2, 1899) the parties, respectively, were represented by counsel, and the respondents' counsel then interposed certain objections to the settlement and allowance of the statement, which objections were embodied in written form, and submitted to the District Court in that form. In connection with said written objections, and as a part thereof, an affidavit of respondents' counsel was also submitted. After hearing counsel in support of said objections and in opposition thereto, an order was made by the District Court overruling the objections. This order was excepted to by counsel for the respondents, whereupon the court allowed the

exception, and by its order brought all of said motion papers and orders thereon upon the record, and the same are incorporated with the statement of the case. All of said orders made in connection with said objections to the settlement of the statement were dated and signed on the 2d day of December, 1899, and on the same day the District Court settled and allowed the statement by a separate order. When the case was reached in this court a preliminary motion was submitted by counsel for the respondents to strike the statement of the case from the record transmitted to this court. The motion was based upon the record, and was made upon all the grounds set forth in the motion papers which were submitted to the District Court, and which objections were overruled by that court as already stated. The written objections found in the record are numerous, and the affidavit of respondents' counsel filed with the same is of considerable length, but for the purpose of disposing of the motion in this court we shall have occasion to consider but one of the several grounds urged by counsel in support of the motion.

The record shows that after the entry of judgment, and in December, 1898, counsel for appellant served a proposed statement of the case upon the respondents' counsel, and that the statement of the case in the record was settled and allowed by the District Court about one year thereafter, and in December, 1899. Among respondents' objections to such settlement, as embodied in the written objections submitted to the court below, was one to the effect that long prior to the date of the settlement of the statement the period allowed by statute for so doing had run and expired, and that no extension of time had ever been given, either by consent of counsel or by order of court; and, further, that no cause for extending time had ever been brought to the knowledge of respondents' counsel by notice or otherwise; and, finally, that no cause for extending time had been at any time shown to the District Court. As has been seen, all of these objections were expressly overruled by the court below, and the statement was settled despite said objections. The settlement of the case operated as an extension of time (*Johnson* v. *Railway Co.*, 1 N. D. 354, 48 N. W. Rep. 227) ; and the question presented is whether the District Court can in such cases, against objection, extend time, in the absence of cause shown for so doing. This question must be answered in the negative. The statute, although exceptionally liberal, does not go so far as to allow time to be extended in such cases without cause and against objection. On the contrary, the statute fixes a condition precedent to such extension. The time can only be extended for good cause shown and in furtherance of justice. Rev. Codes, § 5477. The discretion to extend time is a reviewable discretion. *Moe* v. *Railroad Co.*, 2 N. D. 282, 50 N. W. Rep. 715. It is also true that where no objection is made in the court below that this court will conclusively presume that good cause was shown for the extension of time, and where cause is attempted to be shown this court will apply a liberal rule, favorable to the discretion

exercised in the court below. See *Gardner* v. *Gardner* (Mich.; decided at the present term) 82 N. W. Rep. 522.

In the case at bar we are dealing with an extension of time made against objection, and in the absence of any cause shown for such extension. In the written objections and affidavit filed in the court below counsel for respondents not only opposed an extension of time, but most explicitly called the attention of the trial court to the fact that the time allowed by statute had run, and, further, that no cause for an extension had been shown by appellant's counsel. In response to this challenge counsel for the appellant did not proceed to show cause, or, at least, did not then or at any time bring upon the record any cause whatever for an extension of time; nor did the trial court by its order indicate that any cause was shown, nor suggest that cause for an extension existed within the personal knowledge of the court or judge or elsewhere. Under the circumstances shown in this case, we think counsel for appellant was bound to come forward and show cause for an extension, and, if the cause consisted of facts which were within the personal knowledge of the court or presiding judge, such facts were bound to be disclosed and brought upon the record, to the end that they might he discussed by counsel in the court below and in this court, in the event of a review by this court. Our conclusion is that the learned trial court, under the circumstances of this case, was devoid of authority to extend time and settle the statement. The motion to strike the statement from the record is therefore granted.

Counsel for appellant contend that under section 5467, Rev. Codes, where, as in this case, no amendments are served to a proposed statement, the moving party is not restricted by statute as to time, and consequently that the plaintiff in this case had no need of an extension, and in fact did not ask for or obtain an extension, of time. This position is taken despite the fact that on December 2, 1899, nearly one year had elapsed after the service of the proposed statement, and that the judgment at that time had been entered more than a year. The argument on the statute is this: When the proposed statement is served the other party has 20 days in which to prepare and serve amendments to such statement. The statute then continues: "The proposed statement and amendments must within twenty days thereafter be presented by the party seeking the settlement thereof to the judge who has tried or heard the case upon five days' notice to the adverse party." It is urged that it is only when amendments are proposed that this last limit of 20 days applies. But that seems to us a forced construction. The remainder of the section tends to explain the meaning. It continues: "If no amendments are served, or if served allowed, the proposed statement may be presented with the amendment, if any, to the judge for settlement without notice to the adverse party." It seems clear to us that the 20-days limitation applies equally whether amendments are proposed or not. But in the latter case no 5 days' notice need be

given. Application can be made to the judge *ex parte,* and on the next day after the time for serving proposed amendments expires, and it must be made within 20 days. The statute continues: "If the judge is absent from the district when the proposed statement [not statement and amendment] should be presented to him for settlement, the time of such absence shall not be deemed any portion of the time herein limited for the settlement therof." We are clear that this language applies to all cases where statements must be settled. The construction contended for would not only leave the time of settlement where no amendments are proposed without limit, but would, we think, open the door to unnecessary and vexatious delays in the administration of the law.

The statement of the case which embraced the evidence being thus eliminated from the record, there remains for our consideration only the judgment roll proper, which includes the pleadings, the findings of the trial court, and the judgment. The question, therefore, which we are to determine is whether, upon the issues as framed by the pleadings, the court erred in entering the judgment which was entered. Upon this record, of course, no trial anew in this court, within the meaning of the statute, is now practicable.

The action was brought to foreclose a mortgage upon real estate given to plaintiff by the defendants, and dated on the 15th day of January, 1896; said mortgage covering land outside of a certain mill property, to be hereafter referred to. The mortgage purported to secure the payment of three promissory notes,—one for $1,000, dated December 1, 1895, and two for $2,250, each dated November 15, 1895. The two notes last mentioned matured in 1898 and 1899, respectively. The note for $1,000 fell due by its terms January 1, 1896. The default alleged in the complaint was for the nonpayment of the $1,000 note, which plaintiff alleges is wholly unpaid, except certain amounts paid thereon in the month of February, 1896, aggregating $128.13. The defendants answered, denying the allegations of the complaint, except that they admit that they gave the notes, and executed and delivered the mortgage, as described in the complaint. Further answering, and as an affirmative defense, and as a basis of counterclaim, defendants aver that on and prior to the 15th day of November, 1895, the plaintiff represented to these defendants that he (the plaintiff) was the owner in fee simple of certain mill property, described in a certain contract signed on said date by the plaintiff and the defendant George W. Beatty, a copy of which contract is embraced in the answer, and that the plaintiff would transfer said mill property to the defendant for the price of $10,000.

The contract referred to is prolix, and we shall only set out its substantial features, and these in brief. The plaintiff, by the contract, covenanted with the defendant George W. Beatty to execute and deliver to Beatty a deed of warranty of certain mill property, being the Cando Roller Mill, situated at Cando, in this state, for

an agreed consideration of $10,000, and the contract admitted the receipt by plaintiff of an installment of $500 paid on said consideration. The contract further declared that such deed of warranty was only to be delivered to said George W. Beatty upon the condition that Beatty should perform certain covenants resting upon him, which covenants were specifically set out in the instrument and made conditions precedent. The covenants in the contract made binding upon Beatty were grouped under three heads, and were numbered, respectively, "first," "second," "third." The first covenant required Beatty to pay the additional sum of $9,500 for the mill property, such payment to be made in installments, to be evidenced by a series of five notes, described in the contract, and falling due at divers dates, and aggregating $9,500. Said covenant numbered "first" also required George W. Beatty to secure the $1,000 note described in the complaint, which was one of the series, by a chattel mortgage covering a quantity of grain in granaries situated upon land described in the instrument. The covenant numbered "second" reads as follows: "To assume the payment of two notes, of two thousand dollars each, made payable to the Nordyke & Marmon Company, secured by mortgage on the mill property above described." The notes and mortgage last above mentioned were pre-existing incumbrances upon the mill property. The covenant in the contract numbered "third" bound George W. Beatty to secure said purchase price by a mortgage upon the mill property in question, and, as further security, to execute and deliver to plaintiff a real estate first mortgage upon certain outside real estate described in the contract. The contract embraces the following additional provision: "Said party of the second part to pay all taxes and assessments on said land for the year 1895, and subsequent years, and to repay them to said party of the first part if he shall have to pay them, with twelve per cent. interest per annum for each year's tax as damages until paid."

A persual of the last-mentioned paragraph of the contract, when read in connection with the entire instrument, makes it clear that it was not intended to be a covenant which Beatty was required to perform as a condition precedent to a delivery of a deed of warranty. In the first place, it is a separate and independent paragraph of the contract, and does not appear to belong under either of the three covenants which are expressly declared to be conditions precedent. Again, this paragraph does not require the payment of 1895 taxes upon the mill property especially, but requires that such tax be paid on "said land;" referring, we think, to each and all the several tracts of land upon which Beatty had obligated himself to give a mortgage to plaintiff. Again, this feature of the contract bound George W. Beatty to pay all subsequent taxes upon said land, and contained a stipulation for liquidated damages if Beatty did not pay such taxes, and the same were paid by the plaintiff. In the nature of things, it could not have been intended that the stipulation

to pay all subsequent taxes should be a condition precedent to the delivery of the deed, and yet such would be the absurd result of holding that this feature embraced covenants intended to be conditions precedent. The paragraph quoted binds Beatty to pay the subsequent taxes quite as firmly as to pay the tax of 1895. We think the manifest purpose of this part of the instrument was to enable the creditor, in the event of the nonpayment of taxes by the debtor, to pay the same himself, and to reimburse himself therefor by a rate of interest in excess of the legal rate recoverable in the absence of special contract. For these reasons, and others which need not be mentioned, we shall hold that this part of the contract did not embrace a covenant intended to be or which was a condition precedent to the delivery of the warranty deed; nor does the contract embrace covenants, other than those referred to, which are binding upon the purchaser of the mill property as conditions precedent or otherwise.

The answer further avers that said George W. Beatty, besides making said cash payment of $500, duly performed all of the said covenants resting upon him to be performed, and the performance of which, under the contract, were conditions precedent to the delivery of said deed, and did execute and deliver to plaintiff notes and mortgages which were accepted by plaintiff, and which notes and mortgages have ever since been retained, and that plaintiff did assume and agree to pay said two notes of $2,000 each, which were secured by said pre-existing mortgage upon the mill property. The answer further shows that at the time of the performance of said covenants resting upon the defendant George W. Beatty, as above recited, that said defendant demanded of the plaintiff a delivery of a deed of warranty of said mill property as stipulated in said contract; and that subsequent to such demand, and on or about March 30, 1896, said defendant made another demand upon the plaintiff for such deed of warranty, which was not complied with, and that a final demand for a deed was made on or about April 15, 1896; and that plaintiff has at all times neglected and refused to deliver such deed. The answer alleges that at the time said first demand was made upon the plaintiff, and of plaintiff's refusal to comply therewith, the defendant George W. Beatty notified the plaintiff that he would refuse to comply with his covenants under the contract with respect to making payments thereunder until such time as the plaintiff should perform on his part by a delivery of the deed; and that when said final demand was made, on or about April 15, 1896, and upon plaintiff's refusal to comply with the same, said Beatty then and there offered to surrender to plaintiff any and all of his rights under the contract, and then and there rescinded said contract, and notified the plaintiff of such rescission, and that the same was made upon the ground of a total failure on the part of the plaintiff to perform his covenant with respect to the delivery of a deed of the mill property; and defendant then and there de-

manded a return of his said papers delivered to the plaintiff, as before set out. The answer further charges that at the time said contract was entered into the plaintiff was not the owner of said mill property, and never thereafter became the owner thereof, and further alleged that the plaintiff is wholly insolvent. The answer demanded a dismissal of the action, with costs; and, as affirmative relief, that the contract in question be canceled and adjudged to be void, and that plaintiff be required to surrender up said notes, and execute proper releases of said mortgages, and that the plaintiff be enjoined from selling or transferring said notes, and that judgment be entered in defendants' favor for damages in the sum of $500, with interest from and after the date of said contract. The judgment as entered in the District Court in all respects corresponds with this demand for judgment, except that no money damages were awarded to the defendants.

To the defendants' said answer the plaintiff served a reply containing a qualified denial of the new matter in the answer. Plaintiff, by his reply, admits the execution of the contract pleaded in the answer, and the payment of $500 upon the consideration as stated in the answer, and further admits the execution and delivery of the mortgages to the plaintiff as stated in the answer. Plaintiff further alleges that he caused to be executed a good and sufficient deed of warranty, and had the same in his possession, at or about the time said mortgages were delivered, and at that time showed the same to George W. Beatty, and informed him that the same would be delivered to him upon the full performance of the covenants to be performed by him, the said Beatty; and further alleges that plaintiff is ready and willing to perform his part of said contract by a delivery of such deed, and will deliver the deed when said defendant shall perform the covenants resting upon the defendant; and the plaintiff avers that he brings the deed into court for delivery upon a compliance by the defendant with the said covenants binding upon the defendant. The reply does not aver that plaintiff at any time delivered, or offered to deliver, said deed unconditionally to the defendant; but, on the contrary, states and sets out two, and only two, grounds or reasons why the defendant, from plaintiff's standpoint, is not entitled to a delivery of the deed. The first of said grounds is an allegation that the defendant has not paid the taxes on said mill property for the year 1895 and subsequent years, although such payments have been often demanded of the defendant. The second ground is an allegation to the effect that the defendant had not paid the said notes secured by said pre-existing mortgage on the mill property which he, the defendant, had assumed and agreed to pay, and that one of said notes matured on November 1, 1896, and, not being paid, the said mortgage securing the same was foreclosed on account of the nonpayment of such note, and said mill property was sold at such foreclosure sale on the 23d day of February, 1897. The reply neither alleges nor suggests any

other grounds or reasons for plaintiff's neglect to deliver such deed of warranty.

In our opinion, the grounds of plaintiff's refusal, as stated in his reply and above set forth, are wholly inadequate. We have already shown that the payment of taxes for the year 1895 and subsequent years was not and could not have been a condition precedent to a delivery of the deed, and we are likewise clear that the default in paying the note, which did not, by its terms, mature until about one month after the contract was signed, was not intended to be a condition precedent to a delivery of the deed. The payment of said pre-existing notes had been duly and promptly assumed by the defendant, and such assumption constituted a full performance of defendant's covenant with respect to said notes, as stated in the contract. The contract did bind the defendant to assume and agree to pay the notes, and this was a condition precedent to a delivery of the deed, but the actual payment of the notes was not made such a condition. We therefore find no facts pleaded in the reply which will justify the plaintiff's neglect to deliver the deed in question to the defendant.

Turning to the findings of fact as made by the District Court, we discover that the same are all in defendant's favor, and that such findings fully sustain the allegations of the answer. The findings are too long to be set out in this opinion. We shall only summarize their most salient features. The court found that at the time said contract was made said plaintiff was not the owner of the mill property; that plaintiff had not been the owner at any time since the contract was made; that the defendant paid down $500 upon the execution of the contract, and that the defendant executed and delivered the notes and mortgages required of the defendant; that said mortgage on the outside real estate was not a first mortgage, as was agreed for, but that in lieu of the same the plaintiff accepted said real estate mortgage in connection with certain chattel security, as stated in the findings; and that defendant assumed the payment of the two notes secured by the pre-existing mortgage on the mill property. The court further finds that the plaintiff at no time prior to the trial offered to deliver the deed, but at all times neglected and refused so to do; that upon the execution and delivery of the papers to plaintiff, as above stated, the defendant demanded the delivery of a deed of the plaintiff, and plaintiff then refused to comply with said demand, and gave as a reason therefor that the taxes of 1894 had not been paid, and the defendant had not insured the property; that the defendant then and there notified plaintiff that he, the defendant, would not further comply with said contract until the deed was delivered. It is further found that defendant demanded such deed of plaintiff after a full compliance on his part with all the conditions of the contract binding upon the defendant, and that such demand was not complied with; that on or about April 15, 1896, said George W. Beatty

rescinded said contract, and notified plaintiff thereof, and then and there offered to surrender to plaintiff the possession of the mill property, and then and there tendered plaintiff the possession, and vacated the mill premises, and informed the plaintiff that defendant rescinded said contract upon the ground and for the reason that the plaintiff refused to perform on his part, and had not delivered the deed; that, in connection with said rescission of the contract, the defendant demanded a return to him of all the said notes and mortgages and other papers which he had delivered to the plaintiff under the contract. We find nothing in the contract of sale requiring the defendant to pay the taxes of 1894, or to insure the mill property, and certainly nothing requiring the defendant to do either as a prerequisite to a delivery of the deed.

It appears that some of the mortgages were not delivered at the time agreed upon, and that the first note falling due has not been paid in full when it fell due; but as to these defaults they appear to have been condoned by the plaintiff. It is undisputed that plaintiff accepted and retained all the notes and mortgages delivered to him by defendant under said contract, and that plaintiff, after the maturity of the first note, accepted two payments from the defendant, and indorsed the same on said first note. Under such circumstances, the plaintiff is not in a position to say, and in fact does not say, that the defendant is not entitled to a deed on account of default in the matter of delay here under consideration.

The claim is now made that plaintiff was not bound by his contract to deliver the deed until the entire consideration was paid, the last installment of which became due in November, 1899. We cannot so interpret the contract, especially in view of the fact that the defendant was bound to and did mortgage the mill property back to the plaintiff as security for the purchase money. Until the deed was delivered to defendant, his mortgage thereon would have been without value to the plaintiff and without binding force as a mortgage. No such result of the transaction can resonably be supposed to have been intended by the plaintiff. This point is especially important in view of the fact that the sale contract itself did not operate to convey to defendant any estate or title to the mill property, either legal or equitable, for the reason that the plaintiff, who assumed to sell the property, did not own the same at the time he signed the sale contract or at any time thereafer. Under such circumstances, a deed from the owner was an essential prerequisite to the execution of any valid mortgage on the property by the defendant.

Moreover, it is our opinion that any ambiguity which may inhere in the language of the contract with respect to the time at which the deed was required to be delivered is wholly removed by the interpretation placed upon this feature of the instrument by both of the parties thereto. That the defendant supposed when he executed and delivered his papers to plaintiff that he was then entitled to the deed

has not been questioned, and his repeated demands for the deed demonstrate that he considered his right to the deed clear and unassailable.

Turning to the plaintiff's side of the case, we find that the plaintiff, by his own pleading, has brought upon the record conclusive evidence that he (the plaintiff) did not so construe the contract as to permit him to withhold the deed until the consideration for the mill property should be paid in full. The reply not only makes no such claim, but, on the contrary, shows that the plaintiff made out a deed and showed it to George W. Beatty at the time the latter delivered his papers to the plaintiff, and that at Beatty's request the plaintiff had another deed of the property executed, wherein Beatty's wife was the grantee, and that the plaintiff then informed Beatty that the said other deed was ready, and would be delivered upon the performance of the covenants resting upon the defendant; and the reply shows, further, as do the findings, that the plaintiff brought such deed into court, and at the trial tendered a delivery of it to defendant upon the same terms. The findings show that plaintiff's refusal to deliver the deed was based wholly upon the matter of taxes, insurance, and certain other matters of minor consequence, and these, as well as the averments contained in the reply, show that plaintiff never contended before the trial that he was at liberty to withhold the deed until the price was fully paid. This practical construction of the instrument with regard to the time at which the parties understood that the deed was to be delivered under the contract must forever silence the claim that it was not to be delivered until the property was paid for. We think it unnecessary to pursue the subject further. Our conclusion is that the judgment of the District Court should be affirmed, and this court will so direct. All the judges concurring.